AUGUSTA THOMAS v. WILLIAM H. DANSBY ET AL.

*Liquor traffic—Civil damage act—Injury to means of support—Damages.*

1. In a suit by a wife to recover damages sustained by reason of an injury to her husband at the hands of an intoxicated person, it is not for her to produce proof, or for the jury to speculate, upon the probabilities whether such intoxication was the natural cause of the act which caused the injury. The *act* itself fixes the liability for the damage upon the person selling or furnishing the liquor which produced the intoxication. *Brockway v. Patterson,* 72 Mich. 122.

2. Where a husband has no other means of providing for his family except his wages, an injury which cuts these off is an injury to the wife's means of support within the meaning of the civil damage act.

3. The *actual* damages resulting from injuries received by a husband at the hands of an intoxicated person, recoverable by the wife, may include the amount *due* for medical attendance, the value of the wife's services in nursing the husband, and the loss to her means of support by reason of his diminished ability to labor.

4. The fact that a wife has authorized the sale of liquor to her husband will not prevent her recovering damages resulting from injuries received by the husband at the hands of an intoxicated person to whom the dealer receiving such permission has furnished liquors. *Rosecrants v. Shoemaker,* 60 Mich. 4.

Error to Van Buren. (Buck, J.) Argued February 13, 1889. Decided April 12, 1889.

Case under civil damage act. Defendants bring error. Affirmed. The facts are stated in the opinion.

*Hilton & Chandler (L. A. Tabor,* of counsel), for appellants.

*Benj. F. Heckert,* for plaintiff.

LONG, J. This action is brought by plaintiff, who is a married woman, against William H. Dansby, as principal, and Amos Deming and James Bennett, as sureties on his bond, under the civil damage act of 1883. Plaintiff had verdict and judgment on the trial in the court below for $200. Defendants bring error.

The declaration alleges substantially that on March 29, 1887, the defendant Dansby was engaged in the business of selling at retail intoxicating liquors, and that Deming and Bennett were sureties on his bond; that while so engaged and on that day defendant Dansby sold liquor to Frank Thomas, the husband of plaintiff, and one A. A. Free, and divers other persons, which was drunk by them, and which, being so drunk, caused the said Frank Thomas and A. A. Free and such other persons to become intoxicated, or contributed to their intoxication; that Frank Thomas, husband of the plaintiff, was in the habit of becoming intoxicated, which was known to defendant Dansby; that said A. A. Free was also a person in the habit of becoming intoxicated, of which Dansby also had notice; that, while said Frank Thomas and A. A. Free were so intoxicated at Dansby's saloon, the said Free seized Thomas, the husband of plaintiff, and jerked him about, breaking his leg, whereby the husband of plaintiff become unable to labor or to do anything towards the support and maintenance of the plaintiff, in consequence of which plaintiff was obliged to devote a large share of her time to the taking care of her said husband, and that she had also been obliged to do her household work, and such other work as was necessary to support herself, child, and husband; and she alleges she was injured in her feelings, in the society of her husband, in the loss of time in which her husband would otherwise be employed in supporting and maintaining her and her child, and, by reason of injuries to her

person, property, and means of support, she has sustained damages to the sum of $5,000, etc.

On the trial the defendants admitted that defendant Dansby was engaged in retailing liquor, and had given the bond.

Plaintiff's husband, Frank Thomas, gave testimony on the trial tending to show that he had lived in Paw Paw 12 years; that for about 10 years he had worked for Free & Martin in a hardware store, and received $10 per week nearly all the time; that after that he worked for $2 per day; that he went west, and was gone three or four months, and on his return went to work for $40 per month, and was so working at the time the injury occurred; that on the morning of the day when his leg was broken he went to the place of his employment, swept out, and then went to Dansby's saloon and got a drink. He did not go to breakfast, but, after being out of the saloon for a time, returned to it, and again drank. At this time Free and others were there, and they also drank liquor furnished by Dansby. He went to some other places, and again returned to Dansby's saloon, where he drank with Free.

About 3 or 4 o'clock in the afternoon Thomas had his leg broken by Free, and it appears from the testimony of this witness that both he and Free had been drinking to such excess that Free was considerably intoxicated, and the witness so much so that he could not remember the circumstances under which his leg was broken. It appears, however, from the testimony of other witnesses sworn in the case, that, in a scuffle between Free and a man by the name of Setchfield, and Thomas, in the saloon, the leg of Thomas was broken by Free, and that at this time Free was considerably intoxicated. Thomas was taken home from the saloon, and it appears from the testimony of the plaintiff that both his arms were black and blue,

he had a lump on one side of his nose, and one on his cheek, so that it bled, and his leg was broken. He was laid up with his injuries for about three months. Thomas testified that he did nothing from the day of his injury till after July 4, and that his family had no means of support except his wages. Medical attendance was procured, and the bill amounted to the sum of $50, for which he gave his note. The plaintiff testified that she attended him, nursed and cared for him, night and day, and for over a week she was up with him every night.

Defendant Dansby denied selling or furnishing any liquor to Thomas on that day, but no contention is made on the part of defendants but that Free was furnished liquors several times on that day there, by Dansby and his servants, though they deny that he was intoxicated. Free was called as a witness by the defendants, and himself testified to drinking three times there that day, before the injury occurred, and says that Thomas was quite intoxicated at one time, when he came upstairs, and proposed to set in and play a game of pedro. The manner of the injury or its extent is not denied by the defendants, and no dispute arises but that Thomas had his leg broken by Free, and the evidence is quite conclusive that Free was considerably intoxicated at the time, and by liquor furnished by the defendant.

It is insisted by defendants' counsel, under this state of facts, that the plaintiff would have no right of recovery, as it was not an injury either to her person, her property, or means of support; that if it is conceded that the defendant furnished liquor to Mr. Free by which he became intoxicated, and while so intoxicated broke the leg of plaintiff's husband, the damage, if any, to the plaintiff under such circumstances would be too remote; that, if the plaintiff suffered at all in her means of sup-

port, it had no relation to the sale of the liquor to Free. This question was, however, settled by this Court in *Brockway v. Patterson*, 72 Mich. 122 (40 N. W. Rep. 192). In that case it was said:

"The statute provides, as plain as the English language can state it, that this action shall lie for any injury occasioned by an intoxicated person. It is not for the injured party to produce proof, or for the jury to speculate, upon the probabilities whether the intoxication was the natural cause of the act which caused the death."

But in this case, as in the one above cited, the court submitted that question to the jury. In the present case the court instructed the jury:

"If there was no natural or necessary connection between the intoxication and the accident, if the same thing would have happened had neither Thomas nor Free been intoxicated, then the plaintiff has no ground for complaint."

If the injury was occasioned by reason of the intoxication of Thomas or Free, and such intoxication was produced in whole or in part by the liquors sold or furnished by defendant Dansby, then the case would fall within the terms of the statute, and a recovery could be had if the plaintiff by reason thereof was injured in her means of support. The plaintiff's husband had no other means of providing for his family except his wages, and, these being cut off by the injury, the plaintiff's case certainly comes within the provisions of the statute giving her a right of action for injury to her means of support.

The husband had been earning $40 per month. After the injury, and for upwards of three months, he earned nothing; contributed nothing to the support and maintenance of the plaintiff. It appears that from the time of the injury to July 24 the plaintiff's husband only earned $22.50, whereas before the injury he was earning $40 per

.month. This difference is one of the items claimed by plaintiff as entering into the measure of her actual damages. Plaintiff also claims that the $50 charged by the doctor for medical attendance, and the medicines furnished, amounting to $4.68, are a part of her actual damages, as well as the value of the plaintiff's services for nursing, and the husband's diminished ability to labor; that all these items enter into the question of actual damages to her means of support.

Counsel for defendants, however, contend that, the husband having given his note for the amount of the doctor's bill, the plaintiff's means of support cannot be diminished by this,[1] and that the services of the plaintiff in nursing and caring for her husband cannot be considered as an item of actual damages.[2] We do not agree with the counsel for the defendants in this proposition. It is the intent of the statute to compensate the wife for all such losses to her means of support as may be shown upon the trial, where such loss is occasioned by the intoxication of any person, such intoxication being produced or contributed to by the defendant in the action. If the note is paid, it must be paid out of the wages of plaintiff's husband, and, while she may not yet have suffered such loss, it is one of the losses incident to the injury, and may be taken into consideration by the jury in determining the probabilities of her future loss, the same as they may determine the probability of the husband's ability to earn wages in the future for the support and maintenance of the plaintiff by reason of his injuries being permanent or otherwise. Whatever damages the plaintiff may recover under this statute must be ascertained and

[1] Citing *Flynn v. Fogarty*, 106 Ill. 263; *Huggins v. Kavanagh*, 52 Iowa, 368.

[2] Citing 3 Am. & Eng. Ency. Law, 263, where the cases on this subject are collected.

measured in the one action, and the right of recovery is not limited to the damages accruing up to the time of the trial, but a recovery may be had growing out of the probabilities of future loss by reason of the injury being of a permanent nature. We think this part of the case upon the question of actual damages was properly submitted to the jury.

The additional care and nursing the plaintiff was compelled to bestow upon her husband by reason of the injury is one of the elements of damages which she is entitled to recover. She charges in her declaration that she is injured in her person, property, and means of support. By reason of the injury she is compelled to do additional work to provide for herself and family. She is not only cut off from the husband's accustomed wages, but is deprived, by reason of the care she is compelled to bestow upon her husband, of earning anything for her own support, which may have been as valuable to her support as wages earned by her husband.

On the cross-examination of plaintiff's husband by defendants' counsel, it appeared that on May 29, 1885, plaintiff signed a paper, which was delivered by her husband to defendant Dansby, authorizing him to let her husband have liquor. The plaintiff, upon her examination on the trial, admitted signing this paper. This paper read as follows:

" *W. H. Dansby:*  Let my husband, F. C. Thomas, have liquor when he calls for it, until further notice.
                          "Mrs. F. C. Thomas.
" *May* 29, 1885."

This notice was written by the husband of plaintiff. Counsel for defendants contend that by reason of the giving of this paper the plaintiff consented to the sale of the liquors, if any were furnished by defendant, and she cannot now recover, or at least she could not be permitted

to recover exemplary damages. This would undoubtedly be true as to exemplary damages, if this fact stood alone, not surrounded by other circumstances. It appears from the testimony of the plaintiff's husband that, after plaintiff had served the first notice upon Dansby that he must not sell liquor to her husband, Dansby said to him that he must get his wife to countermand the notice, as he (Dansby) was taking too many chances. Mr. Thomas said, in response to this, "I don't know as she would," when Mr. Dansby responded, "Oh, well, you can make her do it in some way." Mr. Thomas then says he told his wife she must countermand the notice or he would not stay in town; that he was paying his wife a portion of his earnings each week prior to this, but threatened, if she did not countermand the notice, he would not pay her any more money; that she came to him for money, and he refused to let her have it until she countermanded the notice; that he went and got his satchel out, and threatened to go away unless she signed it; that she then signed it, and he delivered it to Dansby, and told him how he procured it. This testimony is corroborated by the plaintiff as to the manner in which the notice was procured. Dansby denies it, and claims that he had no knowledge but what the countermand was the voluntary act of the plaintiff; and that it was not procured at his suggestion. This question was submitted to the jury, under the charge of the court, and they have found in favor of the plaintiff's theory.

The court instructed the jury:

"Upon this question you are instructed that if you find that a paper was given to defendant Dansby giving him permission to sell liquor to plaintiff's husband, then if you further find that such paper was signed by plaintiff of her own free will and accord, she cannot recover in this action, as she would have no reason to complain of an act which she expressly authorized; or if you find

that such paper was not signed by the plaintiff of her own free will, but was extorted from her by her husband, and you further find that defendant Dansby knew nothing of the means by which said paper was procured, then the plaintiff cannot recover, as the defendant Dansby would be authorized to presume that the paper was willingly signed, unless he had some reason to believe the contrary."

This was a more favorable charge than the defendants were entitled to, and they cannot now be heard to complain. The evidence was competent to show how the paper was procured, and that the defendant Dansby advised its procurement, and the means employed by Thomas in getting the plaintiff to sign it. But the court in its direction to the jury overlooked the fact that the plaintiff not only claimed a recovery by reason of the intoxication of her husband, and consequent loss to her means of support, but she was claiming also under her declaration and by her proofs that Free had become intoxicated by liquors sold by defendant Dansby, and while so intoxicated had broken her husband's leg, by reason of which she was injured in her means of support. Indeed, that is the principal ground of her complaint; so that, even if the plaintiff had given authority to sell liquors to her husband, yet, if the injury of which she complained was produced by the intoxication of Free by liquors furnished by defendant, she would have a right of action, irrespective of the paper giving authority to sell to her husband. But this charge, so far as it related to the husband's intoxication, was eminently fair to the defendants.

Claim is made in the declaration, and some evidence given on the trial, showing that the plaintiff had two children,—a son aged 21, and a daughter aged 17, years. This testimony was received under objection of defendants' counsel. We have in two cases at the last term of

this Court held this to be error.    *Larzelere v. Kirchgess-
ner,* 73 Mich. 276; *Johnson v. Schultz,* 74 Id. 75.    This
testimony was held inadmissible in these two cases, for
the reason that under this statute each child as well as
the wife had a right of action in his or her own name,
and one would not be a bar to the other.    The only
purpose of this testimony in this case was to enhance the
exemplary damages.    It could not in any manner affect
the question of actual damages shown in the present
case, as the wife would be entitled to recover all these
items of actual damages if she was entitled to recover at
all.    It is apparent from all the facts in the case that
no exemplary damages were allowed or considered by the
jury.    The facts appear, and without contradiction, that
the husband's loss of wages amounted to over $130, and
adding to this the cost of medical attendance and medi-
cines, the services rendered in nursing and care, and the
diminished ability of the husband to earn wages in the
future, the measure of the actual damages would exceed
the amount of the verdict and judgment.    We do not,
therefore, see how it can be claimed that the defendants
have been injured by the admission of this testimony,
and for this reason alone will not reverse the case.

Some other questions are raised by assignments of error,
directed to the refusal of the court to charge as requested
by the defendants' counsel and to the charge as given,
but, by a careful reading of the charge, we are satisfied
it was very fair to the defendants, and covered all that
they were entitled to ask, and that no error was com-
mitted in the refusal of their request.

We find no error in the record, and the judgment must
be affirmed, with costs.

The other Justices concurred.