STRONG, Respondent, v. SCHAFFER et al., Appellants.

(163 N. W. 1035.)

(File No. 4026. Opinion filed August 7, 1917. Rehearing denied November 2, 1917.)

1. Pleadings—Complaint, Sufficiency—Failure to Object Before Trial, Effect.

While had the objection been made before trial, trial court might properly have required complaint to have been amended, yet held sufficient as against objection to introduction of evidence thereunder, made upon trial.

2. Intoxicating Liquors—Wife's Action for Damages—Drunkard's Habit Before Sales—Provision for Family Theretofore, Effect —Sufficiency of Evidence.

In a suit by wife against saloon keeper and sureties for damages from sale of liquor to her husband, the evidence showing the husband, prior to date of his being sold liquor by defendant saloon keeper, was capable of and was earning a certain competence, and, it being usual for the husband and father to provide for his family, and the evidence showing he did so provide before he became addicted to use of intoxicants, held, that the evidence supported the verdict for plaintiff.

3. Same—Sober Husband's Earning Capacity, as Basis for Recovery —Defense of Diminished Earning Capacity, When Tenable.

Where wife sues saloon keeper and sureties for damages from sale of intoxicants to her husband, held, under the theory that if the husband had not become an habitual drunkard prior to sales in question, yet such sales assist in rendering him incompetent or unwilling to properly supply his family, plaintiff's recovery is based upon earning capacity of husband as a sober man immediately prior to the first sales complained of, and not upon his salary or earning capacity as a sober man prior there-

to. **Held**, further, that such rule does not prevent the defense proving a diminished earning capacity resulting from permanent mental or physical weakness, even though such weaknesses may have resulted from former use of intoxicants.

4. **Same—Extent of Damages, Evidence of—Husband's Prior Earning Capacity, Competency.**

In a wife's suit against saloon keeper and sureties for sale of intoxicants to husband, evidence of husband's earning capacity at some time prior to first sale by defendant complained of is incompetent for purpose of showing extent of damages; such evidence having no probative force as showing diminished earning capacity due to sales complained of; there being no evidence that such sales kept the husband from getting a job worth more than 35 cents per hour, and the complained-of evidence admitted may have warranted jury in adopting a larger earning capacity as a basis for damages.

McCoy and Polley, JJ., dissenting.

5. **Intoxicating Liquors—Wife's Suit for Damages—Sales by Others Than Defendants, Defense of, Competency.**

In such suit, **held**, that the rule that defendants can be holden for all injury done plaintiff through sales by other parties than defendants, even though such sales occurred prior to period of sales complained of, is not tenable.

McCoy and Polley, JJ., dissenting.

6. **Intoxicating Liquors—Wife's Suit on Contract for Damages—Joint Tort-feasors of Other Liquor Sellers—Rule Not Applicable.**

In such suit, **held**, that, even if defendants could be holden as the joint tort-feasors of those who had sold liquor to plaintiff's husband prior to time of defendants' sales, yet such rule does not apply in a suit on contract, based upon the sureties' bond; such not being a tort action; and there is no joint liability upon such bonds.

Appeal from Circuit Court, Brown County. Hon. RAYMOND L. DILLMAN, Judge.

Action by Maude Strong, against Sebastian Schaffer and others, for damages from sale of intoxicating liquors to plaintiff's husband. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

*George H. Fletcher,* and *W. A. Hazle,* for Appellants.

*Amos N. Goodman,* and *Thomas L. Arnold,* for Respondents.

(2) To point two of the opinion, Appellants cited: Campbell v. Johnson, 25 S. D. 458; Sec. 2849, Pol. Code.

(5) To point five of the opinion, Appellants cited: Bellison v. Apland (Iowa) 89 N. W. 22.

Respondent cited: Pol. Code, Secs. 2839, 2844, 2849; Kennedy v. Garrigan, 23 S. D. 265; Dickmann v. Thomas, 154 N. W. 811.

WHITING, J. Defendants Schaffer Bros. were saloon keepers. As such they gave bonds under the provisions of section 2839, P. C. The other defendant, a surety company, was the surety on such bonds from July 1, 1913, until after the commencement of this action, which was in May, 1915. Plaintiff sought to recover on such bonds damages which she claimed to have suffered through the sale of intoxicating liquors to her husband, Leon Strong, by Schaffer Bros. In trial court there were verdict and judgment for plaintiff. From such judgment, and an order denying a new trial, all the defendants appealed.

[1] Appellants question the sufficiency of the complaint. This question was raised in the trial court by objections to introduction of evidence. If it had been raised before trial, the trial court might properly have required the complaint to have been amended; but the complaint was not so lacking in substance as to justify the trial court in sustaining the objection to introduction of evidence. Anderson Lumber Co. v. Spears, 25 S. D. 624, 127 N. W. 643.

[2] Respondent alleged that her husband was in the habit of getting intoxicated; that repeatedly, and on divers days and dates from July 1, 1913, until the commencement of this action, the Schaffers had sold him intoxicating liquors; that by reason of the above she had been and was deprived of the support and maintenance for herself and children to which she was justly and legally entitled from her husband. By the instructions of the trial court we are relieved from any necessity of discussing what respondent had to prove to establish her cause of action. Such court limited respondent's right of recovery to "damages, if any, suffered by the plaintiff occasioned to her means of support for herself and children." Respondent is correct in saying:

"The question is: Did he support his family? If not did the sale of liquor by the defendants enter into his reason for not doing so, and to what extent?"

There was no evidence to show that Strong was ever in the Schaffer saloon prior to September, 1913. The evidence is undisputed that he became addicted to the use of intoxicating liquors

in 1912; that in September, 1913, he was capable of and was earning 35 cents an hour, and continued capable of and did earn this amount up to the time this action was brought; that he had quit giving his family any material assistance before September, 1913; that he was drunk a good share of the time after September, 1913, and bought a part, at least, of his liquor in the Schaffer saloon.   The jury, if it were not for the evidence to the contrary, might have presumed that Strong was, through his drunkenness, rendered less capable of earning money than he was on September 1, 1913.   The jury may have found that, owing to such drunkenness, he actually lost time from his work, though there was no direct evidence that he ever lost an hours' time from his work on account of such drunkenness.   Inasmuch as it is usual and natural for the husband and father to, and in fact is his legal duty to, provide for his family, and inasmuch as there was evidence showing that, before he became addicted to the use of intoxicants, he did provide for his family, the jury were undoubtedly warranted in finding that, if he could not have got intoxicating liquors, he would have used his earnings for the benefit of his family.   Therefore, though we believe it should have been possible for respondent to have furnished better evidence of some of the necessary elements of the cause of action, we would hardly feel justified in reversing the judgment upon the ground, as urged by appellants; that the verdict was unsupported by the evidence.

[3] Appellants contend that certain evidence was improperly received.   Conceding that there was evidence properly received, which furnished answers favorable to respondent to the questions, "Did he support his family?" and "Did the sale of liquor by the defendants enter into his reason for not doing so * * *?" we need still inquire whether there was error in the receipt of certain evidence which we must presume the jury considered in determining "to what extent" respondent was damaged.   The greatest possible earning capacity upon which respondent's claim for damages could be based would be Strong's earning capacity in September, 1913, if he had not then been addicted to the use of intoxicating liquors.   There was no competent evidence that such earning capacity exceeded $90 per month—35 cents per hour. There was received over appellants' objections, evidence in rela-

tion to his earning capacity during a period from November, 1910, to August, 1912. This evidence related to his earning capacity as an employee of a railway company, and showed that, until discharged for drunkenness, he earned from $125 to $135 per month. There seem to be two theories finding support in the decisions of the courts. In Michigan it has been held, in a case such as the one now before us, that the plaintiff could not base her damages on the earning capacity of her husband as a sober man. The court says that the wife cannot claim damage for "the loss of a sober husband when she has only a drunken one." Friend v. Dunks, 39 Mich. 733. Therefore it was held that the jury should consider that, before the defendant made the sales, the plaintiff's husband was already an habitual drunkard.

The second theory seems to be that, although the plaintiff's husband may have been an habitual drunkard previous to the wrong complained of, yet, unless somebody furnished him liquor after that time, he would cease to be a drunkard; that, if defendant furnished him liquor, he was guilty of continuing such habit; that the defendant cannot show, as a matter of defense, that the husband was a drunkard prior to the sales; and that the plaintiff is entitled to recover from such defendant to the extent to which his sales caused the injury complained of. League v. Ehmke, 120 Iowa, 464, 94 N. W. 938. If the husband is an habitual drunkard, the sale to him is unlawful. If he is not yet an habitual drunkard, while the sale is lawful, yet the sales assist in rendering him incompetent to, or else unwilling to properly supply his family. Under this theory plaintiff's recovery is based upon the earning capacity of the husband immediately prior to the sales complained of, such earning capacity being itself based upon the mental and physical powers which the jury finds such husband would have been possessed of, if he had refrained from the use of intoxicants from that time on. It does not prevent the defense proving a diminished earning capacity resulting from permanent mental or physical weaknesses, even though such weaknesses may have been the result of former use of intoxicants. With evidence in relation to the extent of the husband's earnings just prior to the sales complained of, it cannot be presumed that, if such sales had not been made, his earning capacity would have been that possessed by him a year or more previous thereto. If

so, then it would be competent to show how. much the husband was capable of earning at a time when perhaps he was physically a much better man than he would have been at the time of the wrongful sales, even though he had then been free from the use of liquor.    Furthermore, a person's capacity to earn may be weakened through the use of liquor, so that, even if he ceases the use of liquor entirely, he would not be able to earn what he had previously been able to earn.

[4] If evidence of his earnings of two years before would in any manner have tended to show what his earning capacity as a sober man was at the time of these sales, then such evidence was competent.   But the plaintiff was not entitled to recover anything on account of the difference in her husband's earning capacity when he was working for the railroad company and what his earning capacity was, if a sober man, at the time of these sales. To illustrate:   If he could earn $100 a month two years prior, but his earning capacity when sober was only $80 a month at the time of the first sale complained of, the jury would have no right to base any recovery upon the $20 difference.   The sole and only question for determination under the second theory, which is certainly the more favorable to plaintiff, is: What was plaintiff's husband's earning capacity, as a sober man, at the time of the first sale complained of?  The only competent evidence upon that point was that in relation to his earning capacity as a mason's helper—35 cents an hour.   If, in addition to the testimony that was received in relation to his earning capacity as a railroad employee, there had been any evidence that he was yet, if he would cease the use of liquor, capable of holding such a job, the jury would have a right to have used such evidence of former earning capacity as the basis upon which to fix damages.   Woollen & Thornton, Intox. Liquors, § 1065.   There was absolutely no evidence that Strong, if not addicted to intoxicating liquors, could in September, 1913, or later, have got back his old job with the railway company, or that, if he could, it would have paid him the old wages.   Defendants were in no manner liable for damages resulting from the loss of this job; therefore, in the absence of any proof that the sale of liquors to Strong kept him from getting a job giving greater returns than $90 per month, the court should not have allowed evidence to go before the jury, from which

evidence the jury may have used $135 a month as its basis for computing damages, when such basis could not properly have exceeded $90.

Our colleagues are of the opinion that this evidence was competent. They stand, upon the theory that defendants can be holden for all the injury that had been done plaintiff through sales by other parties than defendants, even though such sales occurred prior to the period in which it is alleged that defendants made their wrongful sales. Our colleagues cite Cooley on Torts, 510. The law there announced is as follows:

"Neither is it a defense that others also sold liquors to the husband; but, where several are liable, there can be but one recovery for the injury. If the defendant sold liquor which contributed to the intoxication in question, it is sufficient to establish liability, and all who contribute are jointly and severally liable, and, in the latter case a release of one is a release of all. The damages cannot be apportioned among the defendants, but each is liable for the entire amount."

We have examined all the authorities cited by Cooley in support of such proposition. All such cases are from Illinois. An examination of these Illinois cases discloses that they are all based on the express provisions of a statute of that state under which several defendants may be joined as joint tort-feasors. A reading of these cases discloses that, even under that statute, a party could not be held liable for an injury done, or contributed to, by another, unless the contribution was a contribution to the very intoxication complained of. Thus in Hackett v. Smelsley, 77 Ill. 117, cited in the minority opinion, an instruction was complained of which advised the jury that the mere fact that the husband drank intoxicating liquors at other places than the saloons of defendants *"within the time alleged in the declaration"* was a fact which the jury could not consider in reduction or mitigation of damages. This instruction was held to be correct as an abstract proposition, in view of the provisions of the statute; but it will be noticed that this instruction limited the joint tort proposition to sales that were made *during the period complained of* in the complaint. In Telzner v. Naughton, 12 Ill. App. 148, it appeared that some of the parties who were joined as defendants were those who contributed to the husband's habitual drunken-

ness, while the other defendants were those who contributed to
the particular intoxication complained of, and the court held that
all of these could not be joined as tort-feasors—that the only ones
who could be held as joint tort-feasors, even under the peculiar
statute of Illinois, were those who contributed to the particular
intoxication that formed the basis of the claim for damages.
Thus it will be seen that, even under statutes such as that of
Illinois, one can be holden for the acts of another only when
such acts occurred and thus contributed *within the time com-
plained of*.  It follows that in Illinois a defendant would not be
held liable for the tort of some other party occurring prior to the
time charged in the complaint against defendant, and our atten-
tion has not been called to any authority so holding. The minority
also cite Werner v. Edmiston, 24 Kan. 147.  We believe that a
careful reading of the opinion therein discloses that the court
recognized the very distinction which we have noted above.

If the theory of the dissenting opinion be correct, every per-
son who ever sold the plaintiff's husband a drink during his whole
lifetime is a joint tort-feasor, and equally and jointly liable with
every other person or persons who may have sold him liquors at
any time up to the beginnig of the action, and the limitations upon
the rule of damages involved in the doctrine of causation
would be entirely removed.  We cannot concur in a view which
would logically result in such an extension of the rule of dam-
ages.  It would seem to us · to be a complete answer to the
position taken by our colleagues to suggest that, if defendants
could be holden as joint tort-feasors with all who, in years prior
to the time complained of, had aided in making plaintiff's husband
a drunkard, then, inasmuch as a recovery from defendants would
stand as a bar to any recovery against such joint tort-feasors, the
complaint herein should cover the time during which all the
joint wrongs were committed.

[5] But even if our colleagues were correct, and the defend-
ants, Schaffer Bros., could be holden as the joint tort-feasors of
those who had sold liquor to plaintiff's husband prior to the time
of defendants' sales, yet such rule of law can avail plaintiff noth-
ing in this action.  This is an action upon contract—the bond, and
not a tort action.  This court has held that there is no joint lia-

bility upon such bonds. Kennedy v. Garrigan, 23 S. D. 265, 121 N. W. 783, 21 Ann. Cas. 392; Dickmann v. Thomas, 36 S. D. 283, 154 N. W. 811.

We do not deem it necessary to consider the other assignments of error.

The judgment and order appealed from are reversed.

McCOY. J. (dissenting). The principal reason assigned by the majority opinion for the reversal of the judgment relates to the admission of certain testimony upon the question of damages. It is my view that this testimony was properly admitted, and furnishes no possible ground for a reversal of the judgment. I am of the view that my learned associates have entirely overlooked the general rules applicable to joint tort-feasors. If the defendants contributed towards giving to plaintiff a drunken husband, they are liable for the entire damages resulting therefrom. The evidence in this case clearly shows that defendants did contribute towards making the husband of plaintiff a drunkard, the result of which was to destroy his earning capacity. Damages of this character are recoverable against the bondsmen of a licensed saloon keeper under the present statute of this state. Section 2839, Pol. Code. In this class of cases the measure of damages is the diminution, or decrease in value, of the earning capacity of the husband, that produces the injury to the means of support of plaintiff. One of the ways by which this class of damages may be established is by showing what was the prior or antecedent earning capacity of the husband. Black, Intox. Liq. 308-329; Woollen & Thornton, Intox. Liq. § 1066. Not for the purpose of showing the primary cause of action, but for the purpose of showing the extent of the damage sustained to the means of support, antecedent circumstances may be shown. What the husband was capable of earning in any capacity prior to plaintiff's injury is competent and proper evidence. Flynn v. Fogarty, 106 Ill. 263; Weiser v. Welch, 112 Mich. 134, 70 N. W. 438; Thomas v. Dansby, 74 Mich. 398, 41 N. W. 1088. In Thomas v. Dansby, plaintiff was permitted to go back over ten years previous to the time of the sales of the liquor charged, and show in what particular kinds of work the husband was engaged and what wages he received therefor, for the purpose of ascertaining what was his earning capacity previous to the injury—to ascertain, if you

please, what injury has resulted from the fact that he is a drunkard, to which defendants have contributed in making him.  What the husband worked at and what wages he received therefor prior to becoming addicted to the excessive use of intoxicants, as compared with what he earned after becoming a drunkard, is about the only reliable means of actually ascertaining the injury to the means of support.  In Flynn v. Fogarty, the court said that evidence of this character was highly proper.

The evidence in question was not proper for the purpose of showing that the husband had lost a job by reason of the acts of defendants, and if it had not been competent for any other purpose, the admission thereof was erroneous.  But it seems to me that it was highly proper for the purpose of showing the antecedent earning capacity of plaintiff's husband before he became a drunkard, as compared with what his earning capacity was after he became addicted to the use of intoxicating liquors, which the defendants contributed to bring about.  It may have taken several years to have made plaintiff's husband a drunkard, and many persons may have taken part in selling him the liquors that produce that condition; all those who contributed to the result may not have struck their blow at the same instant, but at diffrent instants of time contributed to the result of making him a drunkard.  The testimony in this case shows beyond any doubt that defendants contributed to the result that produced plaintiff's injury—that made her husband a drunkard.  Some of the earlier decisions in cases of this character held that where plaintiff had nothing but a drunken husband to lose at the time the particular defendants sold him intoxicants was a matter to be taken into consideration as affecting the liability of such defendants; but that doctrine has been exploded by the application of the joint tort-feasor rule.  Under this rule there cannot be a division of damages as between those who contributed to the finished product, each and every one is liable for the whole damages, and a plaintiff has the election of suing one or all.  In this case there might have been others who sold intoxicants to plaintiff's husband prior to the sales made by the defendants; but it is clear from the evidence that the defendants put on the "cap sheaves"—the defendants contributed to and finished the job of making a drunkard of plaintiff's husband, and were liable for the entire

damage, regardless of whether or not some others might also have contributed thereto. The making of a drunkard of plaintiff's husband was but a single injury. Hackett v. Smelsley, 77 Ill. 109; O'Halloran v. Kingston, 16 Ill. App. 659; Werner v. Edmiston, 24 Kan. 147; Cooley on Torts, ·p. 510.

But it is urged that the decisions cited by Cooley sustaining the rule are based solely upon Illinois decisions, which are based upon an express statute to that effect. That is true; but the Illinois statute was nothing more than an enactment or a declaration of the previously existing common-law rule. The same rule is similarly stated in 38 Cyc. 488, and is sustained by decisions cited from many jurisdictions where no such express statute exists. The principle here involved is clearly illustrated by the case of Day v. Louisville Coal Co., 60 W. Va. 27, 53 S. E. 776, 10 L. R. A. (N. S.) 167, where a number of persons, acting independently of each other and at different times, cast slags and slops and other refuge matter into a flowing stream, thereby polluting the same, to the injury of plaintiff, in which it was held that plaintiff might sue any one or all of those contributing to such injury for the entire damages; that, while those causing the injury acted independently and at different instants of time, the *effect* and *result* of their acts *existed concurrently* in producing the injury of which plaintiff complained. So in the case present the defendants, along with others, acting independently and at different instants of time, cast intoxicating slags, slops, and refuse into the life stream of plaintiff's husband, thereby polluting the same with drunkenness, to plaintiff's injury. The effect and consequential result of the acts of all those who so contributed existed concurrently along with what defendants did towards making a drunkard of plaintiff's husband. It was but a single joint injury that was produced, and defendants are liable for the whole injury as joint tort-feasors. The great weight of judicial authority, as I read it, sustains this position, irrespective of the decisions in Illinois, which are based upon a statute of that state. Clinger v. C. & O. R. R., 128 Ky. 736, 109 S. W. 315, 33 Ky. Law Rep. 86, 15 L. R. A. (N. S.) 998.

This case must be distinguished from cases where the husband was injured by reason of some particular intoxication, as where he was run down by a train while in a state of intoxication.

In such cases the injury resulted solely from liquors supplied to him on that occasion. In this case the plaintiff complains of a drunken condition, which from its very nature could only result from long and continued sales to him. It is a matter of common knowledge that those who become habitual drunkards do not secure the intoxicants all from the same saloon, but that they become "rounders," who make the rounds from "joint" to "joint." It is not the theory of the dissenting opinion that every person who ever sold plaintiff's husband a drink during his whole lifetime would be a joint tort-feasor with every other person who may have sold him liquor prior to the beginning of this suit. But we do mantain that, where the injury complained of is the result of general drunkenness, habitual excessive use, every one who contributes towards producing that effect is a joint tort-feasor, liable for the entire injury, and that the evidence cannot be divided up into portions tending to show that each individual joint tort-feasor damaged the plaintiff, because there is but a single injury that can not be so divided. It is the combined *effect* of the different sales that produced the single injury. Wherever the *effect* of different acts concurrently exists, all of which acts, taken together, produce a certain injury, all those who commit such act are jointly liable as joint tort-feasors. The man in his youth, when 21 years of age, might become addicted to the excessive use of intoxicating liquors, and at the age of 25 he might become a total abstainer, and so remain for 25 years, and the effect of liquor drank in his youth might wholly disappear, and then, after he reached the age of 50, he might again become a drunkard. All those who contributed to the effect which brought about this last drunkenness would be joint tort-feasors under the theory of the dissenting opinion, while those who sold to him prior to his becoming 25 years of age would not be joint tort-feasors, because the effect of the prior sales before he became 25 would not concurrently exist with the effect of the sales made after he became 50 years of age.

Again, to further illustrate: A person might be the owner of a valuable well of water. A number of other persons, each acting independently of all the others, at different instants of time, might cast stones into such well, until its utility became destroyed, to the injury of the owner. Each and every one who

so contributed to the filling up of the well would be jointly liable for the whole injury as joint tort-feasors, although the effect of the particular stone that each cast into the well would by itself produce but little injury. Although each stone was cast into the well at a different time from all the others, still the effect of each act of casting a stone into the well concurrently existed with the effect of each and every other stone so cast into such well, and all of which produced but a single injury. It could not be said that every one who, at any prior time during the existence of such well, had ever cast a stone into said well, would be a joint tort-feasor, because stones that might have been cast therein at some prior time might have been removed therefrom, and their effect did not contribute to the injury complained of. Under the majority opinion, evidence could only be offered as to the injury caused by each particular stone cast into the well. The joint tort-feasor rule exists by reason of the fact that it is practically impossible to sever the damages caused by each act from the whole of the acts which produced one injury. The law never requires impossibilities. There is but one injury in such cases, and each contributor thereto is liable for the entire damage.

The judgment appealed from should be affirmed.

POLLEY, J., concurs in the dissent.