Stewart v. The Chicago and Northwestern R. R. Co.

1. **Railroad:** INJURY TO SWINE: LOCAL REGULATION. A railroad company is liable, under chapter 169, Laws of 1862, for hogs killed, without the fault of the owner, upon its track, at a point where it has the right but has neglected to fence its road, notwithstanding swine are prohibited from running at large under a "local regulation" of the county. Following *Spence* v. *The Chicago and Northwestern Railroad Co.*, 25 Iowa, 139.

Stewart v. The Chicago and Northwestern R. R. Co.

2. —— WHEN LESSEE LIABLE UNDER ACT OF 1862. A railroad company which, as the lessee of another company owning the road, has the exclusive right to run, operate and control the road as its own during a term of fifty years, and exercises the right of maintaining a fence along the line, is liable, under section 6, chapter 169, Laws of 1862, for stock killed by reason of its failure to fence the road thus operated by it. The case of *Liddle* v. *The Keokuk, Mt. Pleasant and M R. R. Co.*, 23 Iowa, 378, distinguished from the present one.

*Appeal from Tama District Court.*

THURSDAY, JUNE 17.

ACTION FOR KILLING STOCK.—A jury was waived and the court found the following facts :

1. Plaintiff's hogs, of the value, etc., were killed by defendant's cars and engine as charged, etc.

2. At the time the county had, by a proper vote, adopted what is called the " hog law," and it was in full force.

3. Proper notice of the loss was given, etc., and the road was not fenced where the hogs were killed, though the company there had a right to fence.

4. In 1864, the C. R. and Mo. River R. R. Co., the then owner of this road, leased the same to the defendants, the lease running until the expiration of the charter of the company so owning the road, or fifty years from June, 1859. The defendant had the exclusive right to run, operate and control the road until the expiration of the lease, unless sooner forfeited by the lessee.

5. Since the lease defendant has built fences along the line of the road and now maintains the same. It has also operated said road since the making of said lease.

6. There was no negligence on defendant's part, nor was the loss occasioned by the willful act of the plaintiff.

And as conclusions of law, it was found that defendant was running and operating this road, within the meaning

of section 6, chapter 169, Laws of 1862, and was hence liable for the failure to fence. Judgment for plaintiff in double the value of the stock killed, and defendant appeals.

*Hubbard & Belt* for the appellant.

*Stivers & Safely* for the appellee.

WRIGHT, J. — I. Appellant sugg'ests but does not argue the question of liability growing out of the " local regu-

1. RAILROAD: injury to swine : local regulation.

lation" as to fences in Tama county. It is conceded that the point has been ruled in accordance with the judgment below, and yet we are asked to reconsider the same. We are not possessed of any new light upon this subject; it clearly appers that though defendant had a right to fence when these hogs were killed, it had not fenced, *either in accordance with the " local regulation " or otherwise*. The conclusion of the court below was in harmony with what we have heretofore held, and this conclusion we are not disposed to disturb. See *Fernow* v. *The Dubuque and S. W. R. R. Co.*, 22 Iowa, 528; *Spence* v. *The Chicago and N. W. R. R. Co.*, 25 id. 139.

II. Counsel, however, argue and insist upon the second point, to wit: that defendant is the *lessee of the road*,

2. —— when lessee liable under act of 1862.

and is not, therefore, liable for the failure to fence, relying upon *Liddle* v. *The Keokuk, Mt. Pleasant and M. R. R. Co.*, 23 Iowa, 378. And this is in fact the only question to which they have directed attention in their argument.

Aside from a few cases of injury prior to April, 1868, this point is of but little practical importance. This is plain from the consideration that the act of April 3, 1868, (ch. 79, acts of 1868), extended the provisions of chapter 169, Laws of 1862, to *lessees operating or running any rail-*

*road,* the same as the company owning or controlling the same. This legislation was after and perhaps consequent upon the ruling in the Liddle case. The stock in the case before us was killed in 1865, and we are hence to determine the liability of defendant without the aid of this recent legislation.

In our opinion the case is easily distinguishable from that upon which the appellant relies. There "Kilbourne was individually the lessee in possession of and running the road." For how long a time this lease extended, whether for one day or one month, did not appear. He merely had *possession* of and *was running* the road. There was no pretense that he had ever undertaken to fence any part of the line. Here defendant had the *exclusive* right to *run, operate and control* the road until the year 1909 (if there was no forfeiture). Here, too, defendant had built and maintained fences along the line of the road, in all things treating the same as under its exclusive management and control. It manifestly, from the facts affirmatively found, had the same power to *protect itself,* as the lessor could have if still running the road ; and it is this consideration which becomes controlling in looking at the language and endeavoring to discover the meaning of the statute. Defendant was, for fencing purposes, more than a lessee. It was the company owning and running the road within the meaning of the law. It was, in a word, running and operating it as its own, having the right to fence for its own protection, and, hence, under a like liability as though the absolute and entire owner.

It was never intended to hold that none other than the party or company invested with the entire and full title or ownership of the road should be liable for failure to fence.

The case referred to was placed upon its own circumstances, and its language, as it is believed, carefully

guarded. It was confined to " a lessee in possession of and running a road," and cannot fairly be extended to one having the exclusive right to *run, operate* and *control* the road, with the right to fence undenied and exercised without dispute; a right, too, extending for near a half century. We were aware of these extended leases; were aware that those holding the same had an estate of a more permanent character than if limited to a few months or a year; that it was of such a dignity as that when sold under execution it would be redeemable (Rev. §§ 3329, 3330); that the spirit of the law extended to them, exclusively controlling while operating and running these roads, and never designed to exempt such from the provisions of the statute. There is not, in our judgment, any thing in the case referred to, warranting such exemption. The law itself certainly does not recognize such a distinction.                                    Affirmed.