STEPHENS v. THE D. & ST. P. R. Co.

| 36 | 327 |
| 82 | 372 |
| 36 | 327 |
| J93 | 779 |
| 36 | 327 |
| J104 | 539 |
| 36 | 327 |
| 129 | 732 |

**Railroad:** LIABILITY FOR STOCK KILLED. Where two railroad companies operate trains on the same road, one being the owner and the other a leesee, each is liable only for stock injured or killed by its trains, by reason of the road being unfenced, and not for that injured or killed by the trains of the other.

*Appeal from Jackson Circuit Court.*

FRIDAY, APRIL 11.

THIS action is brought to recover double the value of four hogs worth seven dollars each, and two brood sows worth twenty dollars each, alleged to have been killed on the defendant's railroad. The plaintiff, in his petition, avers that the defendant's railroad extends from Davenport to Maquoketa, and is run and operated by the defendant; that said railroad is not fenced on either side, nor has it cattle-guards as required by law; that the plaintiff's hogs were, on the 4th of January, 1872, lawfully on his lands, lying along said railroad in the township of Maquoketa, and by reason of the defendant's neglect to erect and maintain said fences and cattle-guards, the said hogs escaped from said lands and were then and there run over and killed by a train of cars running on said railroad; and also averred the notice and affidavit of loss entitling plaintiff, under the statute, to double damages.

The defendant, for answer, admitted the ownership and

operation of the railroad as stated, and that it was without fences and cattle-guards as alleged; and averred that the land, at the place referred to, is unimproved and unfenced by the owners thereof, and is, in fact, out to commons; and also averred that the defendant had before that time leased the use of its road from Delmar Junction to Maquoketa (including the place of the injury), to the Iowa Midland Railway Co. (setting forth the lease); that the railroad was then being used and operated by the trains of both companies, each having its own time table and the right to use and operate the same, and to run any and all trains thereon, and that said lessee, by said lease, had the right and was required to fence said railroad, in order to protect it from liability for stock killed thereon; and also averred that the injury sued for was caused by a train of cars belonging to and run by said lessee, and not by the cars of defendant or by a train over which it had any control; and also denied that said hogs were injured or killed by defendant's engine or cars, or that defendant caused the injury. To this answer the plaintiff demurred, because it did not state a defense, specifying wherein. The demurrer was sustained, and judgment rendered for the plaintiff for $136.

The defendant appeals.

*Brown & Campbell* for the appellant.

*Charles Rich* for the appellee.

COLE, J.— Counsel for the respective parties agree in stating the following as the only question for the court to determine in this case, to wit: Is a railroad company which has constructed a railroad and is actually operating it, liable for injuries to stock caused by another company also using the road? The determination of this question depends upon the construction of two statutes. The first is section 6, chapter 169 of Laws of 1862, as follows: "Any railroad company hereafter running or operating its road in this State, and failing to fence such road on either or both sides thereof against live

stock running at large at all points where said roads have the right to fence, shall be absolutely liable to the owner of any live stock injured, killed or destroyed, by reason of the want of such fence or fences as aforesaid, for the value of the property so injured, killed or destroyed, unless the injury complained of is occasioned by the willful act of the owner or his agent." * * * The other is section 1, chapter 79 of Laws of 1868, as follows: "All companies, lessees or corporations hereafter running or operating any railroad within this State, shall be liable for injuring, destroying or killing any live stock the same as railroad companies now are, and all the provisions of chapter 169 of the Laws of 1862, which apply to the putting in of cattle-guards, the fencing of the road, the injuring, destroying or killing of live stock, the neglect of agents and employees, shall be held to apply to such companies, lessees or corporations, as though they were specially named therein, and parties suffering injuries from the running and operation of such roads by such parties shall have all the remedies prescribed in said chapter as fully as they now have against the railroad company."

In order to correctly interpret these statutes, we must consider what was the law before the mischief against which it did not provide, the nature of the remedy proposed, and the true reason of the remedy ; and this mischief we may learn from knowledge of the state of the law at the time and of the practical grievances generally complained of; and in this instance the judicial history reflects light upon the legislation. In the case of *Alger* v. *The M. & M. R. Co.*, 10 Iowa, 268, and which was published in 1861, it was *held*, that in order to entitle a plaintiff to recover against a railroad company for injuring or killing stock on its road, he must prove negligence on the part of the employees of the company, which caused the injury. Practically, it was very difficult to do this ; because the owner of the stock was seldom present himself, or able to find others who witnessed the circumstances of the injury or killing, while the employees of the company were always present, and naturally enough, ready to negative by their testimony

all negligence on their part and indicate their conduct as prudent and careful.    At the first regular session of the legislature after this decision was published, the section of the statute first above set out was enacted.

Afterward it was *held*, in the case of *Liddle* v. *K. Mt. P. & M. R. Co.*, 23 Iowa, 378, that the language of the section first quoted above was not sufficiently broad to justify the court in applying it to a *person* who was "individually the lessee and in the possession of and running said road;" and therefore as to him there must be proof of negligence before any recovery could be had against him for stock injured or killed on his road.    This decision was made in December, 1867, and just prior to the meeting of the legislature of 1868, by which the section of the statute last above quoted was enacted.    Afterward, though in an action arising under the first statute, it was *held* that it did apply to a railroad company which was a lessee and in possession of and running a railroad owned by another company.    *Stewart* v. *C. & N. W. R'y Co.*, 27 Iowa, 282.    We have thus seen what was the law before the first enactment, to wit: that a plaintiff must prove negligence by the railroad company in order to recover for injury to his stock.    And have also seen the practical grievance, or the mischief against which it did not provide, to wit: the inability of a plaintiff to prove, and the great and undue advantage with the defendant to disprove, negligence.    And from these and the language of the statute, the nature of the remedy proposed is very manifest, to wit : to make the statute supply for the plaintiff, this proof of negligence, without which he could not recover and which it was always difficult and often impossible for him to make; and from these also, the true reason of the remedy is likewise manifest, to wit: that a plaintiff, who, without the statute, was unable to protect himself, should be placed on the vantage ground, as against the defendant, who might protect itself perfectly against any seeming severity of the statute, by simply fencing its railroad. Or, to sum them all up, as was done by BECK, J., in *Hinman* v. *The C. R. I. & P. R. Co.*, 28 Iowa, 491 (*i. e.* 495), in a

single sentence, " the statute simply provides, that in the absence of fences, negligence shall be presumed."

As to the second statute above quoted, it is sufficient to say that it was not enacted to enlarge or multiply the remedy provided by the first, but only to make that apply to another class, to wit: persons or individuals who were or might become lessees and in the possession of and running railroads.

Now, as applied to the defendant herein, it is urged, that it is within the very terms of the statute, for that it is a railroad company, operating its road, and that by reason of the want of such .fences as the act requires, the stock in question was killed. But this view overlooks other provisions of the statute, and ignores the purpose of its enactment. This view would make the defendant liable for the stock, if it had been killed there by lightning, the act of God. For, then as now, it could with equal truthfulness have been said, that they were killed by reason of the want of such fences, as required by the act; since, if there had been such fences, the stock would not have been there when the lightning came, just as it is said, if there had been such fences, they would not have been there when the train came, which killed them. In either case they would have been, in just the same sense, killed by reason of the want of such fences. And, if the stock was there killed by the wrongful act of some third person, with whom this defendant had no connection, or by another railroad company, the lessees of the defendant, the same rule would and must apply; for the question is not one of principle, but one of interpretation, and if the language includes either, it will alike include all. But to so interpret the language would be to disregard every canon of construction, and especially the leading one we have before discussed, to wit: To consider the law as it was before, the mischief existing and the nature and reason of the remedy.

Note carefully the language used, " any railroad company *hereafter running or operating its road.*" Why limit the liability to those only which run and operate their roads, if they are to be liable for acts or injuries not connected with such running and operating? But, further, they are made

liable "for the value of the property *so* injured." How injured? Certainly it is not "by reason of the want of such fences." For that does not apply to the way or manner of the injury; it is but the *occasion*. The *cause* of the injury, or the way in which the stock is " *so injured*," is by the running or operating its road. Hence, the defendant is absolutely liable; that is, the law conclusively presumes negligence, making it liable for stock injured, killed or destroyed by running or operating its road unfenced. If the injury was caused by another, it is not liable. It was no purpose of the statute to make it liable in such case. But the statute has made that other equally and absolutely liable for the injuries it may cause.

The last act, which being in *pari materia* with the first, is to be looked to and construed in connection with it, in very words expresses the idea which interpretation evolves from the first, to wit : "And parties *suffering injuries from the running and operation* of such roads, by such parties, shall have all the remedies prescribed in said chapter, as fully as they now have against the railroad company."

There is one thought having some force against the view already indicated, and that is, that where two or more companies run and operate trains upon the same railroad, it may be difficult sometimes to prove which did the injury. But this thought would have greater force in inviting the law-making power to enact a statute casting the liability wholly upon either, than in construing a statute framed for a manifestly different purpose. Besides, it is eminently just, and in accord with universally conceded principles of all sound jurisprudence, that every person shall be liable for his own wrongs, but not for the wrongs of another, with which he has no connection. This principle of abstract right must override every thing, except an express legislative declaration.

Hence, we answer in the negative, the question propounded in concert by counsel, and stated in the commencement of this opinion.

Reversed.