# APRIL TERM, 1908

CASE 70.—ACTION  BY  GEORGE  M.  CLINGER'S  ADMX.,
AGAINST THE CHESAPEAKE & OHIO RY. CO. OF
KY. AND OTHERS.—April 15.

## Clinger's Admx. v. C. & O. Ry. Co.

Appeal from Mason Circuit Court.

JAMES P. HARBESON, Circuit Judge.

From an order transferring the case to the Federal
Court plaintiff appeals—Reversed.

1. Pleading—Conclusion or Facts.—A petition for removal of a
   cause alleging that petitioner's codefendants were not neces-
   sary nor proper parties to the action, and that plaintiff's
   sole purpose in making them defendants was a fraudulent one
   to deprive it of its constitutional right, and that the negligence
   charged against such codefendant was untrue, and so known
   by plaintiff at the time she filed her petition, amounts only
   to a conclusion of the pleader.
2. Torts—Joint Tort-Feasors—Joint and Several Liability.—If in-
   jury is inflicted by two or more wrongdoers, an action may
   be maintained by the injured person either against one or
   against all of them, their liability being joint and several.
3. Negligence—Joint and Several Liability.—While several may
   be guilty of several distinct negligent acts, yet, if their con-
   current effect is to produce an actionable injury, they are all
   liable therefor; the action not being to recover for the negli-
   gent act or acts, but for the injury which they produced.
4. Removal of Causes—Citizenship—Improper Joinder of Parties.
   —In an action for an injury to a traveler at a railroad cross-
   ing, the conductor of the train causing the injury being made

a party defendant, the petition alleging that such conductor by gross negligence so managed and operated the train that it resulted in the injury complained of, the court cannot assume that such allegation is untrue, and that the conductor was joined for the purpose of preventing the removal of the cause to the federal court.

5. Same.—Where an action is brought against a foreign corporation and a resident citizen, and it appears from the evidence on the trial that plaintiff had no reasonable ground to believe that the resident was in any manner liable, the court should give a peremptory instruction in behalf of the resident defendant, and order the case removed to the federal court on application of the defendant corporation.

6. Railroads—Leases—Liabilities of Lessor.—Ky. St. 1903, section 573, enacts that all provisions of charters and articles of incorporation inconsistent with the provisions of chapter 32 shall stand repealed to the extent of such conflict. Section 769, relating to railroads organized in Kentucky, authorizes such corporation to purchase property and franchises of other railroads not competing, or parallel lines, and to make any agreement, not inconsistent with law, with any other railroad company. Held, that a lease under authority of the latter section did not have the effect of relieving the lessor from the same responsibility for negligence in operating the road as existed under its charter, or the charter of the company to whose rights it succeeded; there being nothing in the language of such section exempting it or conflicting with the provisions of such charter.

THOS. R. PHISTER and ALLEN D. COLE for appellant.

POINTS AND AUTHORITIES.

Removal of case to federal court was error. (Chesapeake & Ohio Railway Co. v. Dixson, 179 U. S., 131; Alabama Great Southern Railway Co. v. H. C. Thompson, 200 U. S., 206; Cin. N. O. & Tex. Pacific R. Co. v. Bohon, 200 U. S., 221; Rutherford v. Illinois Central R. Co., et al., 85 S. W., 199; Ill. Central R. R. Co. v. Sheegog's Admr., 103 S. W., 323; McCabe Admx. v. M. & B. S. R. R. Co., 23 Ky. Law Rep., 2328, 112 Ky.)

WORTHINGTON & COCHRAN for appellee.

W. H. WADSWORTH of counsel.

AUTHORITIES CITED.

McCabe's Admx. v. Maysville & Big Sandy R. Co., 112 Ky., 861; Kentucky Statutes, Section 573;, 769; Sinkhorn v. Lexington Turnpike Co., 112 Ky., 205; Illinois Central R. Co. v. Sheegog's Admr., 103 S. W., 327; Lee v. Southern Pacific R. Co., 116 Cal. 97, 38 L. R. A., 71, 58 Am. St. Rep., 140; McCabe's Admx. v. Maysville & Big Sandy R. Co., 23 Ky. Law Rep., 2328; Davis' Admr. v. C. & O. Ry. Co., 116 Ky., 144; Illinois Central R. Co. v. Coley, 28 Ky. Law Rep., 336; McAlister, Admx., &c. v. C. & O. Ry. Co., U. S. Circuit Court of Appeals, Sixth Circuit, decided Dec. 3, 1907; Dishon v. C. N. O. & T. P. Ry. Co., 133 Fed., 471; Kentucky v. Powers, 201 U. S., 1).

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

This appeal is from an order of the circuit court transferring this case to the federal court for trial. The plaintiff (appellant) instituted this action for $25,000 in damages against appellees for the alleged negligent killing of her husband, who, at the time he was killed, was crossing appellee's road on a street in the city of Maysville, Ky. She charged that it was by the joint gross negligence of the three appellees in the management and operation of its train of cars that resulted in the death of her husband; that appellee the Chesapeake & Ohio Railway Company of Kentucky, a Kentucky corporation, was the owner of the road, and had leased it to appellee Chesapeake & Ohio Railway Company of Virginia, a foreign corporation, and that appellee Shannon Hall was the conductor on the train that killed Clinger. The order of removal was made upon the petition of appellee the Chesapeake & Ohio Railway Company of Virginia, a foreign corporation. It was alleged in the petition, in substance, that it and the plaintiff were citizens of different states, and its codefendants the Chesapeake & Ohio Railway Company of Kentucky and Shannon

Hall were not necessary nor proper parties to the action, and that they were made defendants for the sole purpose of preventing a removal of the cause to the federal court, thereby unlawfully and fraudulently depriving the petitioner of a right conferred upon it by the Constitution and laws of the United States; and averred that the allegations of negligence contained in plaintiff's petition as to its codefendants were untrue, and known to be so by her when this suit was brought. It was further alleged that the petition of plaintiff stated no cause of action at all against its codefendants, or either of them. The charge that its codefendants were not necessary nor proper parties to the action, and that her sole purpose in making them defendants was a fraudulent one to deprive it of its constitutional right, amounts only to a conclusion of the pleader. She could, possibly with the same propriety, have stated that they were necessary parties, and that the petition of appellee for removal was for the fraudulent purpose of depriving her of the right to a trial of the case at her residence; and this is also true of the allegation in the petition for removal that the negligence charged in her petition against its codefendants was untrue, and so known by plaintiff at the time she filed her petition. This allegation and the others referred to did not state any jurisdictional fact. The question of negligence or no negligence was an issue solely within the province of the jury to hear and determine. See Chesapeake & Ohio Railway Co. v. Dixon, 179 U. S. 131, 21 Sup. Ct. 67, 45 L. Ed. 121, Cincinnati, New Orleans & Texas Pacific Railway Co. v. George Bohon, 200 U. S. 221, 26 Sup. Ct. 166, 50 L. Ed. 448, Rutherford v. Illinois Central R. R. Co., etc., 120 Ky. 15, 85 S. W. 199, 27 Ky. Law Rep. 397, and Illinois Central

R. R. Co. v. Sheegog's Adm'r, 126 Ky. 252, 103 S. W. 323, 31 Ky. Law Rep. 691.

This brings us to the last proposition made in the petition for removal, to wit, that no cause of action at all was stated in plaintiff's petition against its codefendants or either of them. All the defendants were charged jointly with gross negligence which she alleged produced the death of her husband; and it is a well-established rule that, if the injury inflicted is produced by two or more wrongdoers, an action may be maintained by the person so injured either against one or against all of them. The liability of the wrongdoer is joint and several. The injured person may elect whether he will proceed against one or all of them. While several may be guilty of several distinct negligent acts, yet, if their concurrent effect is to produce an actionable injury, they are all liable therefor. The action, properly speaking, is not to recover for the negligent act or acts, but it is to recover damages for the injury which they produced. See Pugh v. C. & O. Ry. Co., 101 Ky. 77, 39 S. W. 695, 19 Ky. Law Rep. 149, 72 Am. St. Rep. 392, and the cases above cited. It was alleged in plaintiff's petition that the Chesapeake & Ohio Railway Company in Kentucky was a Kentucky corporation, and owned the road, but had leased it to the Chesapeake & Ohio Railway Company in Virginia, which operated it as its agent or lessee, and that Shannon Hall was the conductor of the train which was so negligently managed and operated that it produced the death of her husband while he was passing along a street in the city of Maysville. It does not appear in the record why the lower court made the transfer, but, from the brief of counsel for appellees, we presume that the lower court determined that the Chesapeake & Ohio Railway Company in

Kentucky, although admitted to be the owner of the road, was not operating it, and that Shannon Hall was only the conductor, and by reason of his position he could not and it was not his duty to keep a lookout for persons at street crossings. Although it is alleged in the petition that the conductor, by gross negligence, so managed and operated the train that it resulted in the death of Clinger, we are asked to assume that this is not true because of our general knowledge of the position of a conductor on a train. We also have some general knowledge of the powers of a conductor, although his regular place upon a train is in the caboose. It may be that a conductor has all the power and authority over the management and operation of a train that his title implies, that is, the conductor and the controller of it. On the trial it may be made to appear that the train was being run at an excessive and dangerous rate of speed through the city of Maysville at the time Clinger was killed, and which caused his death, and that the conductor had some power or control over the matter of speed, and could have, by due care, prevented such a rate of speed, or the evidence might show that he was guilty of actionable negligence in some other respect; but if upon the trial it should appear from the evidence that plaintiff had no reasonable grounds to believe, when she filed her petition, that the conductor was negligent in any manner which produced the death of Clinger, then, under the rule in the cases of Ill. Cent. R. R. Co. v. Coley, 121 Ky. 385, 89 S. W. 234, 28 Ky. Law Rep. 336, 1 L. R. A. (N. S.) 370, Dudley v. Ill. Cent. R. R. Co., 127 Ky. 221, 96 S. W. 835, 29 Ky. Law Rep. 1029, and Underwood's Adm'r v. Illinois Central R. R. Co., 103 S. W. 322, 31 Ky. Law Rep. 595, the court should give a peremptory instruction in behalf of

Shannon Hall, and the case should be removed to the federal court, unless the Kentucky corporation, Chesapeake & Ohio Railway Company in Kentucky, the owner of the road, is jointly liable with the Chesapeake & Ohio Railway Company in Virginia, for the negligent acts of any of the servants in charge of the train which produced the injury and death of Clinger.

The only question remaining to be determined is whether the Chesapeake & Ohio Railway Company in Kentucky is responsible in damages with the Chesapeake & Ohio Railway Company in Virginia for the death of plaintiff's intestate. Appellee's counsel virtually concede that, if the provisions of the charter of the Maysville & Big Sandy Railroad Company, which charter the Chesapeake & Ohio Railway Company in Kentucky took when it was incorporated, with reference to its powers to lease the road, are in full force and effect, under the authority of the case of McCabe's Adm'x v. Maysville & Big Sandy Ry. Co., 112 Ky. 861, 23 Ky. Law Rep. 2328, 66 S. W. 1054, the Chesapeake & Ohio Railway Company in Kentucky would be responsible jointly with the lessee, the Virginia corporation; but contend that this provision of the charter of the Maysville & Big Sandy Railroad Company stands repealed by section 573 of the Kentucky Statutes of 1903, which in effect says that all provisions of charters and articles of incorporation which are inconsistent with the provisions of chapter 32 of the Kentucky Statutes stand repealed to the extent of such conflict, and claims that the lease made by the Chesapeake & Ohio Railway Company in Kentucky to the Virginia corporation was made under the provisions of section 769, Ky. St. 1903. The first part of this section deals with the construction of spurs, tracks, or branches of roads by railroad companies

organized in Kentucky, and also authorizes such cor-
porations to purchase the property and franchise of
any other railroad company not a competing or par-
allel line, then authorizes such corporations to sell its
franchise and property to any other company not
a competing or parallel line, or not otherwise pro-
hibited by law to purchase; and, after speaking of
other matters not germane to the matter under con-
sideration, the section closes with these words: "And
may make any agreement or arrangement, not incon-
sistent with law, with any other railroad company."
There is no claim that the Chesapeake & Ohio Rail-
way Company in Kentucky sold its property and fran-
chises to the Chesapeake & Ohio Railway Company in
Virginia; but appellees claim that the lease was made
under the clause of section 769 above quoted, and that
it exempts the Chesapeake & Ohio Railway Company
in Kentucky from all responsibility while the Chesa-
peake & Ohio Railway Company in Virginia controls
and operates the road. We deem it unnecessary to
consider and determine whether the provision of the
charter referred to in the McCabe Case, supra, was
repealed or not by the enactment of section 573, Ky.
St. 1903, for the reason that, in our opinion, if the
lease was made under the authority of section 769,
Ky. St. 1903, it did not have the effect to relieve the
Chesapeake & Ohio Railway Company in Kentucky
from the same responsibility as existed under the
charter of the Maysville & Big Sandy Railroad before
the enactment of section 573. There is nothing in
the language of section 769 exempting it from liability
in such a case. In the case of Gilbert Logan v. N. C.
R. R. Co., 116 N. C. 940, 21 S. E. 959, the court held
that a railroad company could not escape responsi-
bility for negligence by leasing its road to another

company, unless its charter or a subsequent act of the Legislature exempts it from such liability.

In the case of Central & Montgomery R. R. Co. v. Morris & Crawford, 68 Tex. 49, 3 S. W. 457, the court said: "It is well established that a railroad company cannot transfer or lease the right to operate its road, so as to absolve itself from its duties to the public; without legislative authority. Nor will a lease duly authorized by law release the company from a failure to discharge its charter obligations, unless the law giving the power contains a provision to that effect. Abbott v. Horse Car. Company, 80 N. Y. 27, 36 Am. Rep. 572; Ohio & Mississippi Railroad Company v. Dunbar, 20 Ill. 623, 71 Am. Dec. 291; Nelson v. Vermont & Canada Railroad Company, 26 Vt. 717, 62 Am. Dec. 614; Macon & Augusta Railroad Company v. Mayes, 49 Ga. 355, 15 Am. Rep. 678; Railroad Company v. Barro, 5 Wall. (U. S.) 90, 18 L. Ed. 591; 1 Rorer on Railroads, 605 et seq.; 1 Redfield on Railways, p. 616 (*587), c. 22; Pierce on Railways, 283, 496."

In the case of Eliza Chollette v. Omaha & Republic Valley Railroad Company, 26 Neb. 159, 41 N. W. 1106, 4 L. R. A. 135, the court, in considering a question like the one we have before us, quoted with approval the case of Nelson v. Railroad Co., 26 Vt. 717, 62 Am. Dec. 614, as follows: " 'The lessor must, at all events, be held responsible for just what they expected the lessee to do, and possibly for all which they do do, as their general agents; for the public can only look to that corporation to whom they have delegated this portion of public services. Certainly they are not bound to look beyond them, although they may doubtless do so.' "

In the case of Pennsylvania Company v. Ellett, 132

Ill. 654, 24 N. E. 559, the court said: "The law has become settled in this State, by an unbroken line of decisions, that the grant of a franchise, giving the right to build, own, and operate a railway, carries with it the duty to so use the property and manage and control the railroad as to do no unnecessary damage to the person or property of others; and where injury results from the negligent or unlawful operation of the railroad, whether by the corporation to which the franchise is granted, or by another corporation, or by individuals whom the owner authorizes or permits to use its tracks, the company owning the railway and franchise will be liable. Lesher v. Wabash Navigation Co., 14 Ill. 85, 56 Am. Dec. 494; Chicago, St. Paul & Fond du Lac Ry. Co. v. McCarthy, 20 Ill. 385, 71 Am. Dec. 285; Ohio & Mississippi Ry. Co. v. Dunbar, 20 Ill. 623, 71 Am. Dec. 291; Illinois Central Railroad Co. v. Finnigan, 21 Ill. 646; Illinois Central Railroad Co. v. Kanouse, 39 Ill. 272, 89 Am. Dec. 307; Toledo, Peoria & Warsaw Ry. Co. v. Rumbold, 40 Ill. 143; Peoria & Rock Island Railroad Co. v. Lane, Adm'x, 83 Ill. 448; Pittsburg, Chicago & St. Louis Ry. Co. v. Campbell, 86 Ill. 443; Wabash, St. Louis & Pacific Railway Co. v. Shacklet, 105 Ill. 364, 44 Am. Rep. 791; Balsley v. Railroad Co., 119 Ill. 68, 8 N. E. 859. 59 Am. Rep. 784."

In the case of Bower v. B. & S. W. R. Co., 42 Iowa, 546, the court held that a railroad corporation cannot escape liability for an accident occurring while its road is being operated, even though in fact it might have been leased, and was at the time controlled by another party.

In the McCabe Case, supra, this court, in discussing the charter of the Maysville & Big Sandy Railroad under which the Chesapeake & Ohio Railway Company

in Kentucky is. operating, said: "By its acceptance
of the franchises conferred by the State the corpora-
tion assumed the corresponding burdens thereby im-
posed.   These franchises it could not transfer to an-
other without distinct legislative authority. . The
grant of power to lease its property is one thing; the
grant of absolution from its responsibility is another,
and is not to be inferred from a mere power to lease
the road, where the corporation still retains its ex-
istence and the enjoyment of its franchises in the
rents.   For such grants are strictly construed, and, as
against the public, are never extended by construction.
There is nothing in the provision to show that the
Legislature had in mind authorizing the company to
divest itself of its franchise, or permitting it, while
enjoying them or their fruits, to be acquitted of re-
sponsibility for their abuse, without regard to the
financial ability of the lessee or his amenability to
suit."   In the same case this court quoted with ap-
proval, from the case of Driscoll v. Railroad Co., 65
Conn. 254, 32 Atl. 357, as follows: " 'A grant to a
corporation of a right to lay out, construct, and oper-
ate a railroad is the grant to the corporation of
the capacity to exercise a portion of the powers of
sovereignty for the purpose of making pecuniary
profit to itself.   This is its franchise.   Such grants are
never made except at the request of the corporation.
In return the corporation is held to have promised to
pay just damages to any person injured by any want
of care in using the right so granted.   As the grant
is of a public right, in which every one of the public
is a sharer, so the promise is to each one of the public.
A due regard for the public rights obviously requires
that a corporation which has asked for and received
such a grant shall not be absolved from its promise

except by an act of the Legislature to that effect so distinct and unequivocal as not to be open to mistake. Nothing should be left to inference.' '' See, also, York & M. R. R. Co. v. Winans, 17 How. (U. S.) 39, 15 L. Ed. 27, and Thomas v. Railroad Co., 101 U. S. 83, 25 L. Ed. 950.

This rule is established and adhered to by the courts of almost all the states, and is a just one. If the rule were otherwise, the inducement would be great for all domestic corporations to lease their roads to foreign corporations, and avoid litigation in the State courts; and the probability would be, under such rule, that no citizen of a state could have his rights determined in a state court when the amount in controversy exceeded $2,000. The rule as above stated was adhered to in the case of Ill. Cent.R.R. Co. v.Sheegog's Adm'x, 126 Ky. 252, 103 S. W. 323, 31 Ky. Law Rep. 691; but in that case the question considered and determined was as to the liability of the lessor to an employe of the lessee, who was killed by negligence, and the lessor was made responsible because of defective roadbed. That case is unlike this. Clinger was not an employe, but a member of the public traveling on one of the streets of the city of Maysville.

Appellees' counsel contends that the cases of Harper v. N. N. & M. V. Ry. Co., 90 Ky. 360, 12 Ky. Law Rep. 333, 14 S. W. 346, and Sinkhorn v. Lexington, H. & P. Turnpike Co., etc., 112 Ky. 205, 23 Ky. Law Rep. 1479, 65 S. W. 356, establish a different rule, and have the effect to release the lessor from liability for the negligence of appellee's servants in the operation of trains. The Harper Case was decided September, 1890, and it appears that the employes of the Newport News & Mississippi Valley Railway Company (a lessee) caused the injuries to

Harper; but it does not appear whether Harper was an employe of that company or a third party. The presumption is that he was an employe. If otherwise the opinion would be against the trend of all the authorities. The Sinkhorn Case was one wherein Sinkhorn received his injuries by reason of a defective bridge on a turnpike road after the county had become the owner of it under legislative authority after a vote by the people of the county. When Sinkhorn was injured the turnpike company did not own the road or the franchise. The county owned both. The county was relieved from responsibility on the general principle that a county could not be made liable for such torts. Of course the turnpike company was not liable, because it had no interest in the road at the time Sinkhorn was injured; and the court, in substance, said that, when the turnpike company had surrendered all ownership and control to the county, it was not responsible for the torts of the county.

In our opinion the court erred in removing the case to the federal court, and the judgment is reversed and remanded for further proceedings consistent herewith.