Chris Sorenson, Appellant, v. Chicago, Rock Island & Pacific Railway Company, Appellee.

**RAILROADS:** Negligence of Lessee—Liability of Lessor. A railway
1  company may not lease or license its line of railway to another and escape liability for the negligence of the lessee or licensee in operating the trains, even though, by the terms of the license

or lease, the owner retains no control over the operation of such trains.

**RAILROADS:** Switch Tracks—Liability of Owner for Negligence of Licensee. A railway company which, under command of Sec. 2113, Code Supp,. 1913, furnishes switch track connections to another railway, is, under the terms of said statute, liable for the negligence of such connecting road in negligently operating its trains over such switch tracks.

*Appeal from Cass District Court.*—THOMAS ARTHUR, Judge.

JUNE 24, 1918.

THE appellee permitted the Atlantic, Northern & Southern Railway Company to operate its trains over tracks owned and operated by the appellee. The plaintiff was injured because the licensee road, by negligent operation of one of its trains, frightened the horses of plaintiff, and caused them to run away and be injured. The sole question is whether the appellee is liable for such negligence on part of its said licensee.—*Reversed and remanded.*

*H. M. Boorman,* for appellant.

*F. W. Sargent* and *B. A. Goodspeed,* for appellee.

SALINGER, J.—I. The plaintiff seeks to make the defendant liable, upon an allegation that the Atlantic, Northern and Southern Railway Company ran a train at a high and negligent rate of speed on the track of defendant, and that, as the locomotive reached a point about 20 feet from where plaintiff's horse was, the engineer caused a sharp blast of the whistle to be blown, in a negligent and unreasonable manner, and thus frightened the horse, causing it to run away and to be killed, and the plaintiff to be injured. This train was operated by the employees of the Atlantic Railway. Neither defect in machinery nor in roadbed is involved, and the sole question is whether such arrangement in the way of

1. RAILROADS: negligence of lessee: liability of lessor.

leasing as the defendant may have made with the Atlantic Railway absolves the defendant from responsibility for injury caused by said negligent operation of a train. It may be conceded that the negligence was nothing but negligence at common law. The question remains whether its being no more than that is material.

It will be useful to eliminate certain authorities relied upon by appellant, which, in our opinion, are of no help to him. *Bower v. B. & S. W. R. Co.*, 42 Iowa 546, *Railroad Co. v. Brown*, 17 Wall. (U. S.) 445, and 1 Elliott on Railroads (2d Ed.), Section 477, we thus view. In the *Bower* case, the essential point is that if, at the time of the accident, the road is being run in the name of the defendant, and no change in business or management is perceptible to the outside world, such road is liable, though it may in fact have been leased, and be in fact controlled by others. No more than this is determined by *Railroad v. Brown*, 17 Wall. (U. S.) 445, which the *Bower* case cites in its support. In *Brown's* case, the injury was sustained by one riding on a through ticket, issued in the name of the defendant railroad. It is upon this case that Mr. Elliott bases his statement that it has been held by the Supreme Court of the United States that a railroad company which permits another to make joint use of its tracks is liable to the person injured by the negligence of the company to which the permission is granted. And it is as to this holding he says that the weight of authority supports it. *McAllister v. Chesapeake & O. R. Co.*, 198 Fed. 660, holds no more than that, under the law of Kentucky, a lessor railroad company is not liable for the injury of a trespasser on the track by the negligence of employees of its lessee in operating a train. It has been held a railroad lessor is not released where, despite the lease, he tickets through passengers, and these are injured on a connecting road (*Chollette v. Omaha & R. V. R. Co.*, 26 Neb. 159 [41 N. W. 1106] ; *Railway*

*Company v. Brown,* 84 U. S. 445; *Great Western R. Co. v. Blake,* 7 Hurl. & N. 987) ; and that maintenance of a joint depot will not make liability in the lessor for negligent operation by the lessee (*Missouri, K. & T. R. Co. v. Jolly,* 31 Tex. Civ. App. 512 [72 S. W. 871] ; *Miller v. West Jersey & S. R. Co.,* 71 N. J. L. 363 [59 Atl. 13]). The effect of these is that the lessor remains liable under conditions which are not presented by this record. Therefore, they are of no help to the appellant. But that some cases wherein the lessor is not held liable are not available to appellant, of course, detracts nothing from his case, if it be the weight of authority that the lessor remains liable in circumstances that may not be differentiated from the ones present in the record at bar. It is not so important that many decisions in which the lessor is held liable do not help the appellant as it is whether the lessor is liable in such a case as appellant has.

II. The question is not whether there are cases in which the lessor is not liable, nor whether the lessee is also liable. The sole question is whether the lessor is liable under the facts of this case. This being so, we are unable to see how appellee is aided by the cases upon which it relies. *Arrowsmith v. Nashville & D. R. Co.,* 57 Fed. 165, followed in *Hayes v. Northern Pac. R. Co.,* 74 Fed. 279, is that, where a lease is made without authority from the legislature, the lessor continues liable for all the negligences of the lessee, because, in such case, the latter is treated as the agent of the lessor in operating the railroad. That a void lease will not relieve the lessor from liability, of course, does not establish that the lessor is not liable if the lease is not void.

While appellee concedes it is under charter duty to maintain its road in proper condition, and that *De Lashmutt v. Chicago, B. & Q. R. Co.,* 148 Iowa 556, at 560, holds that both owner and lessee are liable for injury due to faulty construction, it insists the rule applies only to defec-

tive construction.   But the rule is not thus exclusive,—or, rather, the *De Lashmutt* case is not.   That both may be held to answer where defective construction causes the injury does not prove they are under no liability for anything but defective construction.

It is thoroughly well settled, and elaborate briefs for the proposition were scarcely necessary, that a lessor of a railroad is not liable to an employee of the lessee's where his employer negligently injures him, unless the injury is due to some defect in construction or maintenance.

In *Banks v. Georgia R. & B. Co.,* 112 Ga. 655 (37 S. E. 992), it is held that a chartered railroad company which, under legislative authority, leased its franchises and tracks to another such company, is not liable for the homicide of an employee of the latter, caused by the negligence of a co-employee.   To say nothing of the distinction that here was a total lease, and that this is a tort committed by one employee upon another, this appears in the opinion:

"There is great contrariety of judicial opinion in respect to the responsibility to the public of a lessor railroad company for the acts of the lessee's servants in operating the franchise, where the lease is authorized by statute, but without a provision for the lessor's exemption from liability.   We apprehend, however, that no case can be found where it is held, in the absence of a statute creating the liability, that a proprietary railroad company which has, by legislative authority, leased its road and franchise, is responsible for a tort to an employee of the lessee, resulting from the negligence of a co-employee."

It is the manifest purpose of Sections 2066 and 2039 of the Code to put upon the lessee or licensee the same liability under which the owner rests.   The Supreme Court of the United States, dealing with what is now said Section 2066, held, in *Chicago & N. W. R. Co. v. Crane,* 5 Sup. Ct. Rep. 578, that a leasing thereunder did not destroy the

identity of the lessor; wherefore, a foreign lessor sued in Iowa may not, on suit against the leased road, have a removal to a Federal court.

Section 2039 of the Code of 1897 provides that all of the duties and liabilities imposed by law upon corporations owning or operating railways shall apply to all lessees, as fully as if the latter were expressly named in the law, and that any action which might be brought, or any penalty that might be enforced against such corporation under any provisions of law, may be brought and enforced against such lessee. The utmost that this statute and Section 2066 effect is to make the lessee, as well as the lessor, liable. Because of these statutes, recovery could have been had against the Atlantic road, had it been sued. But, though this settles that the lessee is liable, it in no way determines that the lessor is not liable.

Due, no doubt, to the absence of such statutes as these, it was held, in *Sprague v. Smith,* 29 Vt. 421, that a lessee is not liable for injury caused solely by the misconduct or negligence of the lessor. It holds further, but not more than that one actually operating a railroad is as liable for such injury, if due to its own negligence, as it would be if it owned the road over which it is running. This would support a claim that the Atlantic Northern is not liable for negligence on part of the defendant, though liable for its own negligence. But it gives no support to a claim that the lessor is not responsible for negligent act of the Atlantic Northern road. Nor does *Wasmer v. D. L. & W. R. Co.,* 80 N. Y. 212, 216, 217, hold to the contrary. Our statutes and all these cases merely settle that the lessee cannot escape liability for injury caused by defective condition of the track, and that, under certain conditions, a lessee may be liable, though it is not the owner of the road upon which it operates. It has no bearing on the claim that creating a license or making a lease will absolve a rail-

road corporation from responding for the negligent acts of its lessee or licensee.

There are cases holding that, where there is a valid lease, and not a mere running arrangement, with license to use the road, the lessee is, under certain statutes, liable for stock wrongfully killed. In one of the cases so holding, the two companies agreed that they would operate the road jointly, and have equal rights thereon, and that each company should settle all claims for damages caused by its own trains, and that the lessor was to direct the running of all the trains and prescribe the rules therefor. See *Wabash R. Co. v. Williamson*, 3 Ind. App. 190 (29 N. E. 455). This, for various reasons, holds that the lessee is liable in the case stated. Self-evidently, this is no authority for the position of appellee.

We are unable to see how cases which hold that, because of statute, the lessor only is liable for injury caused by failure to fence, helps either party. Of this class is *Pittsburg, C. & St. L. R. Co. v. Hunt*, 71 Ind. 229; *St. Louis, W. & W. R. Co. v. Curl*, 28 Kans. 622; *Pierce v. Concord R. Co.*, 51 N. H. 590; *Liddle v. Keokuk, Mt. P. R. Co.*, 23 Iowa 378; and so of *Stewart v. Chicago & N. W. R. Co.*, 27 Iowa 282, which distinguishes the *Liddle* case, and holds that a lessee for a term of 50 years who exercises the right to maintain fences along a line is liable for injury caused by failure to fence. *Stephens v. D. & St. P. R. Co.*, 36 Iowa 327, and *Clary v. Iowa Midland R. Co.*, 37 Iowa 344, seem to us to hold no more than that statute law, properly interpreted, relieve lessor and lessee, respectively, for damages for stock killed by the other. *Brockert v. Central Iowa R. Co.*, 82 Iowa 369, but decides that, where a railroad is being operated by a receiver, he, and not the company, is liable for the value of stock injured on the unfenced right of way, through the negligence of the railroad employees.

2-a

The defendant maintains and operates a large switch-yard and tracks which run east and west through Atlantic. The Atlantic Northern Railroad has a depot situated on the north side and at the west end of said yards.

2. RAILROADS: switch tracks: liability of owner for negligence of licensee.

It owns and operated its own line from Kimballton to this depot. It also owns and operates its line from a point starting on the south side of the Rock Island tracks, and near the east end of said switchyard, from whence it operates south to Villisca. There is thus a break in its lines. Under some arrangement with the defendant, the Atlantic Northern Railroad used the tracks of defendant to fill this gap. The importance of this situation lies in the fact that appellee claims that, in permitting the use of its tracks, it only obeys the statute which requires it, under certain conditions, to give connection by proper switch tracks. Now Code Section 2037 and Section 2113, Code Supplement, 1913, do provide that railway companies are compelled by law to make connections with and furnish interchange tracks for other railway companies for the interchange of cars. Thereupon, appellee attempts to distinguish *Harden v. North Carolina R. Co.*, 129 N. C. 354 (40 S. E. 184). It argues that the Atlantic road was merely permitted to use what is, in effect, a transfer track; and it is said that defendant might have been compelled, by the order of the Board of Railroad Commissioners, to construct a transfer track for this use.

We are not prepared to hold that, where one railroad leaves a break in its own lines, and operates in different direction from each end of the break, that any statute puts a duty upon another railroad to give the use of its tracks for the purpose of becoming a part of the line of the other carrier, and of thereby filling the break which the other has left in building. And Section 2113, Code Supplement, 1907,

which contemplates some sort of action when a carrier fails or refuses to give proper switch track connection, has the express limitation that nothing therein shall be construed to relieve any railroad company from present responsibility or liability for damage to persons or property. So that, if it were conceded that the defendant furnished nothing but a switch track connection, and was in duty bound to do so, that fact will, under the terms of the statute itself, not permit it to say to this plaintiff that the duty to furnish the switch track relieves it from all liability, if the other carrier used said track in such manner as to have injured plaintiff.

III. *Arrowsmith v. Nashville & D. R. Co.*, 57 Fed. 165, attempts to distinguish *Railway Company v. Brown*, 17 Wall. (U. S.) 445, because the lease involved in the *Arrowsmith* case is total. The same distinction is attempted in *Hayes v. Northern Pac. R. Co.*, 74 Fed. 279, and *Little Rock & Ft. S. R. Co. v. Daniels*, 68 Ark. 171 (56 S. W. 874). The reasoning is that, when a complete lease authorized by law is made, this effects a transfer of the management, and so of the rights and liability of the management, from which it is deduced that the owner is not liable for torts of the lessee. See, also, Patterson on Railroad Accident Law, Section 131; Pierce on Railroads, page 283. These assume the lessor retains no control (Hutchinson on Carriers [2d Ed.], Sec. 515b; *Caruthers v. Kansas City, Ft. S. & M. R. Co.*, 59 Kan. 629 [54 Pac. 673]), and assume, also, that there is no breach of any duty which the lessor owes to the public (1 Elliott on Railroads [2d Ed.], Sec. 469). The general rule stated by these is illustrated by *Mahoney v. A. & St. L. R. Co.*, 63 Maine 68, where it is applied to a passenger who contracted with the lessee only, and where such lessee had exclusive control. We might well dispose of all this by forbearing to indulge in speculating upon matters not presented by this record. It does not appear that defendant

made a total lease,—abandoned the operation of its own road to a lessee,—and that in any sense it did confer exclusive control upon another. But the question is important, and we think it advisable to determine it.

In essence, it is the position of the appellee that this case comes within the general rule which absolves the landlord from liability for the negligence of the tenant, where the landlord elects to retain no right of control. See Wood on Landlord & Tenant (1st Ed.), Section 539. The position is well illustrated by the reference appellee makes to 2 Blackstone's Commentaries, 309, 310, which classes a lease among the six things that constitute an original conveyance, and by the statement that the general public has, in the case of a lease by a railroad, no greater rights against the lessor and lessee than it has in the case of any other lease. This, of course, is perfectly sound, if it can be maintained that the defendant railroad corporation is the ordinary landlord. But does it occupy that position? It operates under a franchise grant by the public, and assumes a relation to the public that the owner of a leased house does not stand in. The ordinary landlord has the right to lease his premises without grant from the legislature. It is not and cannot well be claimed that a railroad corporation can lease without authority from the legislature. The claim is that, having such authority, the leasing ends the responsibility of the lessor. Now, Section 2066 of the Code authorizes any railway corporation to lease its property and franchises to, or make joint running arrangements not in conflict with law with, any other railway corporation. It contains the further provision that any corporation operating the railway of another shall be liable in the same manner and extent as though such railway belonged to it. Section 2039 of the Code provides that all the duties and liabilities imposed by law upon corporations owning or operating railways shall apply to all lessees as fully as if they were expressly named, and any ac-

tion which might be brought or penalty enforced against the owning corporation may be brought or enforced against such lessees. It will be noticed that, in giving the authority to make leases or joint running arrangements, that, at the least that can be said, the statute hints most strongly that the authority to lease or make joint running arrangements does not relieve the lessor from any duty owing the public. But relying on inference is unnecessary. If there is anything thoroughly settled in the law, it is that, though authority to license and to make joint running arrangements is given by statute, yet the owner is not relieved from the negligence of the other if such negligence injures anyone to whom the lessor is under duty as to the management of its property, unless exemption from such liability is expressly given by the legislature. That a complete lease by a railroad is authorized does not relieve the lessor from negligent acts of the lessee. *McCabe's Admx. v. Maysville & B. S. R. Co.,* 112 Ky. 861 (66 S. W. 1054) ; *Clinger's Admx. v. C. & O. R. Co. of Ky.,* 128 Ky. 736 (109 S. W. 315) ; *Chicago & N. W. R. Co. v. Crane,* 5 Sup. Ct. Rep. 578. It cannot be so relieved by inference, but only by an unequivocal legislative release *(Driscoll v. Norwich & W. R. Co.,* 65 Conn. 230 [32 Atl. 357] ; by an unequivocal release from its charter duties *(McCabe v. Maysville & B. S. R. Co.,* 112 Ky. 861 [66 S. W. 1054] ; *Central & M. R. Co. v. Morris & Crawford,* 68 Texas 49 [3 S. W. 457], *De Lashmutt v. Chicago, B. & Q. R. Co.,* 148 Iowa 556, at 560). In *Chicago & G. T. R. Co. v. Hart,* 209 Ill. 414 (70 N. E. 654), it is held, on an application of *Logan v. North Carolina R. Co.,* 116 N. C. 940 (21 S. E. 959), that there can be no release by inference of *any* charter duty, and that, if the charter exacts compensation to injured servants, then the lessor, depite the lease, remains as liable for such an injury to a servant of the lessee as if lessor had remained in charge, and had itself injured the plaintiff while he was its own servant. In *McMillan v. Michigan S. & N. I. R. Co.,* 16

Mich. 79, 102, the statute considered authorizes a railroad company "to make any arrangements with other railroad companies, within or without this state, for the running of its cars over the road of such other company, or for the working and operating of such other railroads, as said companies shall mutually agree upon." It is held, as to the effect of this statute, that the intent to relieve the lessor must be clearly expressed, or at least be a matter of inevitable inference; that, from mere permission to the proprietors to lease such roads, it should be presumed, in the absence of any declaration to the contrary, that it was not intended to dispense with regulations which the law deems important in the public interest and for its protection; that the power to lease does not imply power to transfer greater rights than the lessor has, and, where the obligations assumed by the lessor pertaining to the management of its business and the liability which should spring therefrom are the consideration upon which it got its franchise, it would be a violent inference that the legislature designed to waive these when a lease is made, and when they remain no less important to the public protection after the lease is made than they were before.

In *Clinger's Admx. v. C. & O. R. Co.*, 128 Ky. 736 (109 S. W. 315), it is said:

"This rule is established and adhered to by the courts of almost all the states, and is a just one."

The same conclusion is announced in *McCabe's Admx. v. Maysville & B. S. R. Co.*, 112 Ky. 861 (66 S. W. 1054).

IV. Departing now from the negative proposition that appellee presents no adequate support of the judgment it has, we have to say that the case law fully sustains the appellant.

In *Jefferson v. Chicago & N. W. Co.*, 117 Wis. 549 (94 N. W. 289), a railroad corporation permitted a lumber company to connect its private logging track with one of the

railroad's tracks. The lumber company ran its engines up-
on one of these tracks, to remove some logging cars to the
woods for loading. While on the tracks, this engine, which
was defectively equipped, set fire to property of the plain-
tiff piled near by, under some license to pile it there. It is
said:

"It appears the defendant company allowed a private
corporation to use part of its tracks with a dangerously de-
fective engine, by reason of which plaintiff's property was
destroyed. The defendant now seeks to avoid liability for
the loss, because the private corporation was engaged in its
own business, and the defendant did not know that the en-
gine it used was defective. It cannot thus escape liability.
Leaving out of consideration the fact that the act of draw-
ing loaded cars upon the loading track for transportation
or taking empty cars therefrom for loading was essentially
an act in the course of the defendant's own business, and
partly, at least, for its own benefit, the principle is well es-
tablished that, when a railroad company permits another to
make joint use of its track, it is liable for injuries caused to
person or property by the actionable negligence of such
licensee. * * * *Railroad Co. v. Barron,* 5 Wall. 90. It has
received its franchise to operate a railroad subject to cer-
tain *well defined* duties as to the machinery which it uses.
It cannot, while exercising those franchises, allow others to
come in with defective machinery and use the quasi public
highway jointly with it, and escape the duty laid upon it
by its charter to use machinery. Such a rule would open a
door by which public servants, while reaping all the pecun-
iary benefits of their franchises, could easily escape from
a considerable portion of their correlative duties by licensing
irresponsible third persons to transact certain portions of
their business. In the present case, it is clear that, while
the lumber company was moving its engine over the defend-
ant's side tracks, it was operating the franchise of the de-

fendant with its consent. It was as much the duty of the defendant company to see that this engine was not defective while using such track as to see that its own were not defective."

In *Pennsylvania Co. v. Ellett*, 132 Ill. 654 (24 N. E. 559), the court said:

"The law has become settled in this state by an unbroken line of decisions that the grant of a franchise giving the right to build, own and operate a railway carries with it the duty to so use the property and manage and control the railroad as to do no unnecessary damage to the person or property of others; and where injury results from the negligent or unlawful operation of the railroad, whether by the corporation to which the franchise is granted, or by another corporation, or by individuals whom the owner authorizes or permits to use its track, the company owning the railway and franchises will be liable."

It is held, in *Chicago & Erie R. Co. v. Meech*, 163 Ill. 305 (45 N. E. 290), that a railroad company which allows other companies to run over its track is jointly liable with such other companies for injury caused by the negligence of the latter.

In *Railroad Co. v. Barron*, 5 Wall. (U. S.) 90, the Supreme Court of the United States holds that the giving the privilege of using the road did not relieve the owner from responsibility. In that case, the railroad was operating its own road, and in addition, had granted to another company the right to operate trains on the tracks of the defendant. A train operated by this licensee negligently struck a passenger emerging from one of the lessor's trains, and the lessor was held responsible for this negligence on part of the train that ran on its road with its permission. The appellee seeks to distinguish this by saying that it is applicable only had a passenger of the appellee's been injured by negligence in operating a train of the Atlantic Northern & Southern,

and concedes that, in such case, the defendant would be liable for the negligence of the Atlantic Northern. We do not think the distinction is tenable. The license given either absolves or fails to absolve this defendant from responsibility for negligent operation on part of its licensee. If giving the license absolves, then defendant would not be liable, even if injury to a passenger of appellee's was the particular thing effected by the negligence of its licensee. If absolved from the negligence, it does not matter whom the negligence injured. On the other hand, if there was no absolution, this defendant is responsible, not only where one of its passengers is hurt, but in any case where the negligence of its licensee is one for which the defendant would be responsible if it itself had done what its licensee did. If not absolved, it remains responsible, as it was before it gave the license; and it is not claimed that, if this plaintiff had been injured by the negligent operation of one of the trains of the appellee, that it would not have been liable for the very injury suffered by plaintiff. If not absolved, it does not matter that the breach of duty injured someone other than a passenger. The question is not what the injurious breach of duty was, but whether the defendant was released from responding for the negligence of its licensee. It seems to us, therefore, that the *Barron* case is fully applicable. And it is not only case law. The underlying reasoning is very cogent.

### 4-a

Undoubtedly, it is a sound abstract proposition that a party is not liable for the negligence of an independent contractor, and that is the utmost that *City & S. R. Co. v. Moores*, 80 Md. 348 (30 Atl. 643), comes to. But even in that case it is held that, where there is a duty owing to the public by a turnpike company to see to it that no injury be sustained by persons traveling over its roads, it may be liable even for the negligence of an independent contractor,

if the existence of the duty owing the public made it proper
to anticipate that negligence of the contractor might im-
peril the safety of the public.   And it is said that:

"Even if the relation of principal and agent or master
and servant does not, strictly speaking, exist, yet the person
for whom the work is done may still be liable if the injury
is such as might have been anticipated by him as a probable
consequence of the work let out to the contractor, or if it
be of such character as must result in creating a nuisance,
or if he owes a duty to third persons or the public in the
execution of the work."

In *Water Co. v. Ware,* 16 Wall. (U. S.) 566, and in
many cases here and in England, the result is reached
in substance that, "when the employer owes certain duties
to third persons or the public in the execution of a work,
he cannot relieve himself from liability, *to the extent of
that duty,* by committing the work to his contractor."
In *Mayor, etc., of Baltimore v. O'Donnell,* 53 Md. 110, a
city was held liable for an accident which resulted from
a rope's being stretched across the street, which was
being repaired.   A lantern had been hung on the rope, but
was shortly afterwards broken by some boys, and not re-
placed.   The city claimed freedom from liability because the
work was being done by an independent contractor; but it
was held responsible because of the duty imposed on it to
have the work done properly, and have precautions against
accident observed.   With reference to street improvements
by a municipal corporation, it has been held that the duty
of the city to maintain its street in a safe condition cannot
be delegated, so as to relieve the city from liability for fail-
ure to perform this duty.   *Prowell v. City of Waterloo,* 144
Iowa 689.   In *Nelson v. Vermont & Can. R. Co.,* 26 Vt. 717,
it is said that, on lease, the lessor "must, at all events, be
held responsible for just what they expected lessees to do,"
and probably for all which they do do as their general

agents; for the public can only look to that corporation to whom they have delegated this portion of the public service, and certainly they are not bound to look beyond them—although they doubtless may do so. Upon which it is ruled that the lessor shall see to it that the road "is properly finished before they suffer it to be run by anyone." *Clinger's Admx. v. C. & O. R. Co.*, 128 Ky. 736 (109 S. W. 315), approves this.

More persuasive still is another reason often given. It is said in the *Clinger case*, 128 Ky. 736 (109 S. W. 315):

"This rule is established and adhered to by the courts of almost all the states, and is a just one. If the rule were otherwise, the inducement would be great for all domestic corporations to lease their roads to foreign corporations and avoid litigation in the state courts."

And *McCabe's Admx. v. Maysville & B. S. R. Co.*, 112 Ky. 861 (66 S. W. 1054), reaches the same conclusion, on the reasoning that, otherwise, liability might be avoided by making a lease without "regard to the financial ability of the lessee or his amenability to suit." In *Nelson v. Vermont & Can. R. Co.*, 26 Vt. 717, the lessor railroad made lease permitting the lessees to run the road under a long lease. An injury occurred because the lessees operated without sufficient cattle guards or fences, and the lessor was held responsible for this, on the reasoning that this must be done, unless the lessor may be permitted to put its road into the hands of a corporation or individual of no responsibility, in order to avoid which the English courts denied the legality of leasing at all, except on consent of Parliament.

*Harden v. North Carolina R. Co.*, 129 N. C. 354 (40 S. E. 184), is an extreme case in that it permits an employee of a lessee to recover of the lessor for injuries sustained while operating for the lessee. It may be the result was influenced by the fact that the lessor had taken an indemnity bond from the lessee. We are not minded to follow it, in so far as it

may hold that the lessor must respond to an injury to such an employee, where the injury is not due to some defect in the roadbed or the construction of the road. But, while this is so, we do agree with the decision in so far as it declares why leasing or "farming" out the franchise of a railroad will not exempt such lessor from responding for the negligence of its lessee, unless a statute expressly exempts the lessor from responding. That reasoning is that, in the absence of such exemption, the lessor is estopped from setting up the lease as a defense, and so release itself from liability for the negligence of its lessee; since it would be against public policy to allow a railroad corporation to put off the liability incident to its franchise, while enjoying the profits that may accrue by the medium of a lease.

V.   This record does not advise on whether the defendant did or did not reserve control. We might stop here, and dispose of the case. For, if loss of control acquits defendant, it was for it to show it had lost it. But we are not minded to stop with this. Assume that control was surrendered to the licensee, and the question remains, Who shall suffer, the defendant who might have kept control, or the public that had no power to protect itself from the creation of a negligent lessee? Loosely speaking, the defendant did not have control of the negligent employees of its licensee, but it could have kept control of their employer. It could have reserved power to eject the employer. It could have protected itself before consent to the occupancy by demanding indemnity bond arrangements. No member of the public could make such demand. Defendant certainly was, at all times, in duty bound to see to it that the public was not injured by negligent operation on its own part. When it arranged with the Atlantic Northern, it had that duty, and it had the power to make negligent use of its property by the Atlantic Northern impossible by exercising its right to keep that railroad off its property. It could have

made sure of redress for negligence of its licensee. It cannot permit that company to use its tracks and so make negligent operation thereon possible, and say to a member of the public injured by such negligence that it must look to the lessee for redress. In one word, it could take the chances of what the lessee might do, or refuse to take them. It could perform its duty to the public, by keeping control of all agencies that might injure a member of the public, and properly operate such agencies. It cannot absolve itself from this duty by taking chances on whether its lessee would perform that duty,—chances against which the public could not protect itself. The law obligates defendant to see that the general public should not be injured by a negligent use of defendant's property. The rights of the public are in the keeping of the legislature, and so are the rights of the corporation. The corporation could not free itself from its obligations by its own act. It requires the consent of the legislature; and, while it had consent to permit the Atlantic Northern to operate, it had no agreement by the legislature that it should not be responsible if its licensee did not do for the lessor what the lessor was always under obligation to do.

We are of opinion that the case must be—*Reversed and remanded.*

Preston, C. J., Ladd and Evans, JJ., concur.